PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| RICKY A. PLESIA | ) | CASE NO. 5:08-CV-00214 |
| Plaintiff, | ) | |
| | ) | JUDGE NUGENT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MAGISTRATE JUDGE PEARSON |
| COMMISSIONER OF SECURITY | ) | |
| Defendant. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |

Plaintiff Ricky A. Plesia sought judicial review of the Social Security Administration's final decision denying his applications for Supplemental Security Income and Disability Insurance Benefits (collectively "benefits").  This matter was referred to this Court for the submission of a report and recommendation.  Having reviewed the pending briefs, administrative record and applicable law, the undersigned recommends that the decision denying benefits be affirmed.

## I. Overview

In his middle forties, Plesia is married and has children.  He worked as a crane operator for several years before injuring himself while working, in 1992.  Plesia had surgery in 1998 and 1999 to remedy back pain.  He continued working until 2004.  He has undergone physical therapy and trigger point injections to correct his back problems with limited success.  Although he uses a cane to walk and takes several medications to alleviate pain, Plesia still reports frequent pain symptoms.  Several physicians have examined Plesia, and all of them suggest that he is

(5:08CV00214)

capable of light or sedentary work.

## II. Procedural History

Plesia filed applications for Social Security Disability and Supplemental Social Security Income benefits on January 31, 2005 and April 12, 2005, respectively.  He claimed a disability onset date of May 28, 2004.  The Social Security Administration denied Plesia's request for benefits initially on April 1, 2005 and again on June 22, 2005.  Plesia requested a hearing before an Administrative Law Judge ("ALJ") and appeared with counsel.  A vocational expert, Ted Macy, testified at the hearing.  On September 13, 2007, the ALJ issued an opinion denying Plesia's disability claims.  Plesia timely appealed to the Appeals Council.  On November 28, 2008, the Appeals Council denied review of Plesia's case.  Plesia then timely filed a complaint with this Court alleging that the ALJ made several findings that are not supported by substantial evidence or were not properly articulated to constitute adequate reasons for the findings. Specifically, Plesia raises the following six assignments of error:

1. Whether the ALJ's findings that Plesia's impairments do not meet or equal the listings is sufficiently specific and, additionally, whether it is supported by substantial evidence in the record?

2. Whether the ALJ followed the requirements of SSR-96p in finding that Plesia can do other work, which exists in significant numbers in the national economy and whether, in making his finding, the ALJ ignored the VE's testimony regarding Plaintiff's need to use a cane while standing?

3. Whether the ALJ failed to follow the requirements of SSR 96-3p, 20 C.F.R. §404.1529, 20 C.F.R. §416.929, and the case of *Duncan v. Sec'y of H.H.S.*, 801 F2d 847 (6th Cir. 1986), in considering Plesia's allegations of pain, fatigue, and reaction to stress?

4. Whether the ALJ followed the requirements of SSR 96-7p, 20 C.F.R.

-2-

(5:08CV00214)

§404.1529(c)(3) and 20 C.F.R. §416.929(c)(3) in finding that Plesia's allegations of disabling symptoms were not credible?

5. Whether the ALJ failed to follow regulatory provisions and the Commissioner's own policies when he did not refer Plesia for a consultative exam prior to making his decision?

6. Whether the Commissioner committed legal error and failed to fully and fairly develop the record by neglecting to re-contact the treating sources, where necessary, to obtain updated and clarifying information relative to functional limitations, pursuant to 20 C.F.R. §404.1527, 20 C.F.R. §416.927, SSR 96-5p and SSR 99-2p?

*See* ECF No. 19 at 1-2.

### III. Law and Analysis

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the ALJ properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Furthermore, judicial review of the ALJ's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Id.* The Court must review the findings of the ALJ consistent with the above deferential standards.

(5:08CV00214)

**A.  The ALJ Sufficiently Explained that Plesia does not have an Impairment or Combination of Impairments that Meets or Medically Equals One of the Listed Impairments in 20 C.F.R. Part 404.**

An ALJ follows a five-step sequential process to determine whether the claimant is disabled.  At Step One, the ALJ considers the claimant's work activity.  A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit.  At Step Two, the ALJ considers the medical severity of the claimant's impairments.  A claimant is not disabled if he or she does not have a severe medically determinable physical or mental impairment that meets the duration requirement in 20 CFR § 404.1509, or a combination of impairments that is severe and meets the duration requirement.  At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement.[1]  Claimant is disabled if he or she has an impairment that meets the listing and the duration requirement.  Before considering the fourth step, the ALJ must determine the claimant's residual functional capacity – the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments.  At Step Four, the ALJ considers whether the claimant's residual functional capacity permits him to perform past relevant work.  A claimant is not disabled if he can perform past relevant work.  At the final step, Step Five, the ALJ considers the claimant's residual functional capacity and his age, education, and work experience to determine whether the claimant may work.  A claimant is disabled if he or she is unable to work.  *See* 20 C.F.R. § 404.1520(a)(4).

---

[1]  *See e.g.*, 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.  §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), and 416.926).

-4-

(5:08CV00214)

At Step Three, it is the claimant's burden to show that his impairments meet or equal a listed impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). This burden shifts at Step Five of the sequential analysis, where the Commissioner must prove that there are a significant number of jobs in the national economy that the claimant can perform. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The Sixth Circuit noted in *Her v. Comm'r of Soc. Sec.*:

> The rationale behind this rule is simple. It is thought to be unfair to require a lay claimant to prove that there are no jobs available in the economy which he can perform because such a determination requires a level of expertise in vocational matters. On the other hand, it is not unfair to require a claimant to prove the extent of his impairments.

*Her*, 203 F.3d at 391 (Internal citation omitted).

The regulations require the ALJ to determine at Step Three that a claimant is disabled if he or she has an impairment that meets or equals one of the listings. 20 C.F.R. §416.920(a)(4)(iii). Title 20 C.F.R. 416.927(f)(2)(ii) provides:

> Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

Accordingly, the Sixth Circuit has emphasized, "[i]t is more than merely helpful for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (*quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

The Sixth Circuit has discussed the level of specificity required at Step Three of the

(5:08CV00214)

sequential analysis.  In *Bledsoe v. Barnhart*, 165 Fed. Appx. 408 (6th Cir. 2006), the claimant did

not argue that she had one impairment that met or equaled a listing.  *Bledsoe*, 165 Fed. Appx. at

410-11.  Rather, the claimant argued that several impairments, viewed together, met or equaled a

listing.  *Id.* at 410.  The ALJ in *Bledsoe* found that "the medical evidence establishes that the

claimant has 'severe' impairments . . . but that she does not have an impairment or *combination*

*of impairments* listed in, or medically equal to the one listed in Appendix 1, Subpart P,

Regulations No. 4."  *Id.* at 410-11. (Internal citation omitted) (Emphasis in original).  The ALJ

also considered the credibility of witnesses and expert reports.  *Id.* at 411.  The *Bledsoe* Court

found:

> The ALJ did not err by not spelling out every consideration that went into the step
> three determination. The language of C.F.R.§ 404.1526 does not state that the ALJ
> must articulate, at length, the analysis of the medical equivalency issue. It states that
> the ALJ should review all evidence of impairments to see if the sum of impairments
> is medically equivalent to a "listed impairment." This is exactly what the ALJ did.
> The ALJ described evidence pertaining to all impairments, both severe and non-
> severe, for five pages earlier in his opinion and made factual findings. The ALJ
> explicitly stated that he considered the combination of all impairments even though
> he did not spell out every fact a second time under the step three analysis.

*Id.*  The Court went on to explain that a "heightened articulation standard would be inconsistent

with this court's rulings."  *Id.*

Other circuit courts require only minimal articulation at Step Three.  For example, the

Third Circuit has held that the ALJ is not required to "use particular language or adhere to a

particular format in conducting his analysis."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir.

2004).  Rather, the Court considers whether the ALJ's decision, read as a whole, indicates that

the ALJ "considered the appropriate factors in reaching a conclusion" that the claimant does not

-6-

(5:08CV00214)

meet a listing.  *Id.*  The Ninth Circuit has also stated that "it is unnecessary to require the

Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of

the listing of impairments."  *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

      In this case, the ALJ determined that Plesia had severe impairments but not ones that

individually or in combination met or equaled a listed impairment.  Plesia alleges the ALJ's

determination was not sufficiently specific or supported by substantial evidence.  In particular,

Plesia argues that the ALJ did not state which listings Plesia failed to meet; that the ALJ

referenced a two-year old State Agency report that did not cite specific findings and was written

without examining Plesia; and that the ALJ rejected the treating physicians' findings that he is

capable of light work.  ECF No. 19 at 4-5.  In objecting to the findings of the ALJ, Plesia asks

this Court to apply the rationale in *Knox v. Astrue*, Case No. 1:06-CV-2481, (N.D. Ohio October

24, 2007).  ECF No. 19 at 4.  In *Knox*, the ALJ stated only, "The claimant does not have an

impairment or combination of impairments that meets or medically equals one of the listed

impairments."  *Knox v. Astrue*, Case No. 1:06-CV-2481, ECF No. 20 at 15.  The *Knox* Court

noted this finding was not sufficiently specific because "[t]he ALJ's conclusion [was] neither

preceded nor followed by any discussion of why Knox failed to meet or equal the listings."  *Knox*

*v. Astrue*, Case No. 1:06-CV-2481, ECF No. 20 at 15-16.

      The Commissioner responded that *Knox* is inconsistent with Sixth Circuit case law; that

other circuits require only minimal articulation; that deficiency in articulation is harmless error;

that Plesia waived this argument because he did not state which listings he met; and lastly, that

the State Agency considered whether Plesia met a listing.  ECF No. 23 at 8-10.  In support of his

(5:08CV00214)

arguments, the Commissioner relied on *Price v. Heckler*, 767 F.2d 281 (6th Cir. 1985). ECF No. 23 at 8.  In *Price*, the ALJ found that "Price's impairments were not equivalent in severity to any impairment listed in 20 C.F.R. Appendix 1 of Subpart P." *Price*, 767 F.2d at 283.  The *Price* Court found that "[a]lthough the ALJ's findings of fact could have been stated with more particularity, we are not persuaded that his findings are legally insufficient." *Id.* at 284.

At Step Three, the ALJ stated that Plesia's severe impairments are disorders of the back and chronic pain.  (Tr.15.)  However, the ALJ also stated that Plesia "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).[sic]"  (Tr. 15.)  The ALJ explained:

> [t]he above determination is supported by the opinions of the State Agency medical consultant who completed the report marked as Exhibit 7F. I also note here that no medical source has offered the opinion that Plesia's impairments, individually or in combination, have met or equaled a listed impairment (20 CFR 404.1527(f), 416.927(f) and Social Security Ruling 96-6P).[sic]

(Tr. 16.)

The State Agency medical consultant, Dr. Walter Holbrook, found that Plesia could occasionally lift and/or carry twenty pounds (Tr. 220); frequently lift and/or carry ten pounds (Tr. 220); stand, walk, or sit six hours in an eight hour workday (Tr. 220); and had unlimited ability to push and pull (Tr. 220).  The State Agency medical consultant also found that Plesia should never climb; he can, however, stoop and crouch occasionally.  (Tr. 221.)  Moreover, Plesia has no manipulative, visual, communicative, or environmental limitations.  (Tr. 222-23.)  Finally, the State Agency medical consultant found that Plesia reports symptoms such as pain,

(5:08CV00214)

weakness, and stiffness in his back.  (Tr. 224.)

The ALJ also found the opinions of Plesia's treating physicians — Drs. Gutlove, Rivera-Weiss, Cecil, and Erickson — to be consistent with the opinion of the State Agency medical consultant.  Dr. Gutlove reported that Plesia's only restriction is driving a forklift.  (Tr. 147-48.)  More important, he was at a loss to explain Plesia's symptoms.  (Tr. 152, 154, & 156.)  Similarly, Drs. Rivera-Weiss and Cecil recommended that Plesia retire or not return to work as a crane operator, and that he may be able to perform light, sedentary work.  (Tr. 161, 184, & 190.)  Dr. Cecil reported inconsistencies and pain amplification from Plesia.  (Tr. 189.)  Finally, Dr. Erickson reported that while Plesia could not return to his former job, he could probably perform light, sedentary work.  (Tr. 207.)  These consistent findings are undisputed.

Upon review, this Court finds that at Step Three, Plesia did not meet his burden of showing that his impairments met or equaled a listing.  At the threshold, Plesia did not allege which listing his impairments met or equaled.  His silence caused the ALJ to speculate about which listing Plesia allegedly met.  In his opinion, the ALJ properly articulated why Plesia's impairments do not meet or equal a listing.  Unlike the ALJ in *Knox*, the ALJ in the instant case preceded his conclusion with two specifically articulated reasons that Plesia's impairments do not meet or equal a listing.  (Tr. 16.)  The ALJ specified that he relied on the State Agency medical report and the opinions of Plesia's treating physicians.  (Tr. 16.)  It is also important to note that ALJ afforded equal weight to all of the physicians' opinions because the opinions were consistent in finding that Plesia is capable of light or sedentary work.  (Tr. 19.)

This Court is not required to remand where there is substantial evidence to support a

(5:08CV00214)

finding of not disabled at Steps Four and Five. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 428 (6th Cir. 2007) (*citing Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). Similarly, the Tenth Circuit recently reviewed *Clifton v. Charter*, 79 F.3d 1007 (10th Cir. 1996), cited by Plesia, and held that this decision does not require "reversal where the ALJ's factually substantiated findings at Steps Four and Five of the evaluation process alleviates any concern that a claimant might have been adjudged disabled at Step Three." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005). The *Fischer-Ross* Court went on to explain that "[n]either *Clifton*'s letter nor spirit require a remand for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination . . . ." *Id.* at 734.

Read as a whole, the ALJ's decision reflects a thorough review of Plesia's abilities and limitations. There are undisputed findings in the ALJ's opinion that confirm his determination that Plesia's impairments did not meet or equal a listing. Therefore, the Court finds that the ALJ's determination that Plesia's impairments do not meet or equal the listings were sufficiently specific and supported by substantial evidence in the record.

### B. The ALJ Properly Found, Based on the Testimony of a Vocational Expert, that Plesia can Perform Other Substantial Gainful Activity that Exists in the National Economy.

When an ALJ finds that a claimant does not have the residual functional capacity to perform his or her past relevant work, the burden shifts to the Commissioner to prove that the claimant can perform "other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Specifically, the

-10-

(5:08CV00214)

ALJ must find, based on substantial evidence, that the claimant "has the vocational qualifications to perform specific jobs." *Id.* (*citing O'Banner v. Sec'y of Health, Educ. & Welfare,* 587 F.2d 321, 323 (6th Cir.1978).* The ALJ may rely on the testimony of a vocational expert as substantial evidence provided that the hypothetical question posed to the expert "accurately portrays individual physical and mental impairments." *Varley,* 820 F.2d at 779 (*citing Podedworny v. HarrisI,* 745 F.2d 210, 218 (3d Cir.1984)).*

Plesia claims that the ALJ failed to follow the requirements of SSR 96-9p in finding that Plesia could do other work, which exists in significant numbers in the national economy, because the ALJ ignored the vocational expert's testimony regarding Plesia's need for a cane while standing.  ECF No. 19 at 5.  Plesia asserts the ALJ made three omissions in his analysis: (1) Plesia uses a cane to ambulate and balance, (2) the vocational expert testified that a person who uses a cane to ambulate and balance will have a problem working, and (3) the ALJ did not discuss the impact of Plesia's use of a cane on the ability to work.  ECF No.19 at 6.  The Commissioner responded that (1) the ALJ assumed that Plesia used a cane to ambulate, *i.e.* walk (2) Plesia testified that he used the cane to walk, not stand, and (3) there is nothing in the record to prove that Plesia needs a cane to balance.  ECF No. 23 at 10-11.

During the hearing, the ALJ asked the vocational expert "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (Tr. 20.)  Based on that hypothetical, the vocational expert stated that Plesia could perform the following four jobs: Bench Assembler, Wire Worker, Final Assembler, and Charge Account Clerk.  (Tr. 20.)  The vocational expert also considered whether

-11-

(5:08CV00214)

the use of a cane would affect the number of jobs that Plesia could perform.  (Tr. 409.)  The

expert testified that for an individual who can sit for one-half hour and stand for ten minutes, the

use of a cane to *ambulate* would not affect the ability to perform these jobs as long as the change

of position took no longer than ten to fifteen seconds.  (Tr. 410.)  However, the vocational expert

also testified that the use of a cane to s*tand* may affect the ability to perform the aforementioned

jobs.  (Tr. 411.)  In response to questioning by Plesia's counsel, the expert testified that using a

cane to stand would be a problem.  The expert added that he did not understand Plesia to need a

cane while standing.[2]

The ALJ properly considered the vocational expert's testimony.  The relevant portion of

the ALJ decision states:

> I note that the claimant's representative asked additional hypothetical questions
> imposing further residual functional capacity limitations that elicited a response from
> the vocational expert.  I give no weight to this line of questioning, as the
> representative raised queries regarding limitations that are not consistent with the
> objective evidence of record or with the residual functional capacity determined
> herein.

(Tr. 21.)  This passage shows that the ALJ followed the requirements of SSR 96-9p and properly

considered the relevant portions of the vocational expert's testimony.

The hypothetical proposed by Plesia's counsel did not accurately portray Plesia's physical

impairments.  There is no evidence in the record that Plesia needs a cane to stand.  The record

reflects that a doctor prescribed the cane for Plesia to use while walking, not standing.  (Tr. 396.)

---

[2] "If there was an individual that had to stand, whenever he was standing he had to lean on one hand, certainly that would eliminate the use of both hands in the job and that would be a problem, but I didn't, I didn't hear that in there. I wasn't sure."  (Tr. 411.)

(5:08CV00214)

He can walk two blocks with the use of a cane.  (Tr. 399.)  From time to time, Plesia uses the

cane to prevent falling if his left leg goes numb.  (Tr. 396.)  Neither Plesia, nor any physician,

stated that Plesia uses one hand to hold a cane and the other hand to balance.  As importantly, the

vocational expert did not believe the hypothetical posed by Plesia's counsel accurately reflected

Plesia's impairment, causing the expert to exclaim, "I didn't hear that in there. I wasn't sure."[3]

(Tr. 411.)

The ALJ's analysis gives Plesia the benefit of the doubt by considering his use of a cane

to ambulate.  Further accommodations are not supported by the record.  Based on the record

before it, this Court finds that the ALJ followed the requirements of SSR-96p in finding that

Plesia can perform other work, which exists in significant numbers in the national economy.

### C. The ALJ Properly Evaluated the Intensity and Persistence of Plesia's Pain Symptoms.

The Sixth Circuit has created a two-part test to evaluate subjective complaints of pain.

*See Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986).*  According to

*Duncan*, the ALJ should initially determine "whether there is objective medical evidence of an

underlying medical condition."  *Id.*  If so, then the ALJ determines "whether objective medical

---

[3] The ALJ's failure to afford any weight to the unsubstantiated allegation that Plesia needed a cane to stand would be harmless, if an error.  In *Bass v. McMahon*, 499 F.3d 506 (6th Cir. 2007), a case similar to Plesia's, the vocational expert stated that the "plaintiff would not be able to perform the jobs if plaintiff leaned on his canes with both hands while sitting . . . ."  *Bass, 499 F.3d at 510.*  However, none of the doctors "ever recorded that he observed plaintiff doing this." *Id.*  Accordingly, the *Bass* Court found that the ALJ's "failure to explicitly state how much weight the ALJ's opinion [ provided] such observations [was] harmless under *Wilson* because the ALJ's opinion [was] completely consistent with such observations." *Id.*  (referring to *Wilson, 378 F.3d at 547*).  The same rationale would apply in the instant case.

(5:08CV00214)

evidence confirms the severity of the alleged pain arising from the condition; or . . . whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.*

Title 20 C.F.R. § 416.929(c)(1) provides: If the medical signs or laboratory findings show that a claimant has a "medically determinable impairment that could reasonably be expected to produce" his or her symptoms, such as pain, then the court evaluates the intensity and persistence of the claimant's symptoms to determine how the symptoms limit the claimant's capacity for work. In conducting such an evaluation, the court considers objective medical evidence and other evidence. In particular, the court may consider the claimant's history, the signs and laboratory findings, statements from the claimant, his or her treating or nontreating source, or other persons, and medical opinions. Furthermore, the court will consider the following seven factors as stated in 20 C.F.R. § 416.929(c)(3):

> 1. Daily activities;
> 2. Location, duration, frequency, and intensity of pain or other symptoms;
> 3. Precipitating and aggravating factors;
> 4. Type, dosage, effectiveness, and side effects of medication;
> 5. Treatment, other than medication;
> 6. Other measures used to relieve pain; and
> 7. Other factors relating to function limitations and restrictions.

The claimant's subjective complaints and medical reports are central to this review. It is well established that a medical report that re-states a patient's claims of pain is not considered objective medical evidence. *Bass*, 499 F.3d at 510. When that is the case, "the doctor's opinions are not due much weight when based solely on reports made by a patient that the ALJ found to be incredible." *Id.* (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir.2007).

-14-

(5:08CV00214)

Accordingly, the ALJ does not have a "duty to give such observations controlling weight or provide good reasons for not doing so" because there are no medical judgments. *Id.*

Plesia claims that the ALJ failed to follow the requirements of SSR 96-3p and the Sixth Circuit precedent set forth in *Duncan* when the ALJ considered Plesia's allegations of pain, fatigue, and reaction to stress.  ECF No. 19 at 7.  Plesia argues that there is objective medical evidence to substantiate his claims of pain.  ECF No. 19 at 9.  Plesia relies on the results of his 2004 functional capacity evaluation, where he exhibited slow transfer, use of a cane, fatigue, red eyes, inability to extend his knee, and tenderness in the lumbar spine.  ECF No. 19 at 8-9.  The Commissioner claims that the ALJ properly evaluated Plesia's symptoms of pain by reviewing Plesia's treatment course, objective medical evidence, and daily activities.  ECF No. 23 at 12.

In his written opinion, the ALJ found that there was objective medical evidence of an underlying medical condition.  (Tr. 17.)  He also found that the objectively established medical condition was of such a severity that it could reasonably be expected to produce the alleged disabling pain.  (Tr. 17.)  Despite those findings, the ALJ did not believe that the intensity and persistence of Plesia's symptoms limited his capacity for work.  (Tr. 17.)

The record before the Court includes medical records that merely restate Plesia's subjective complaints of pain.  Therefore, the ALJ followed the first step required by statute and case law when he found that the record contained objective medical evidence of an underlying medical condition.  The ALJ also followed the second step when he found that the objectively established medical condition was of such a severity that it could reasonably be expected to produce the alleged disabling pain.  Consequently, the remaining issue is whether the ALJ

-15-

(5:08CV00214)

properly evaluated the intensity and persistence of Plesia's symptoms in order to determine how

those symptoms limit his capacity for work.

The ALJ's written opinion showed that he considered several factors to conclude that the

intensity and persistence of Plesia's symptoms did not limit his capacity for work.  The ALJ

relied on the following facts: (1) opinions from all physicians that Plesia may return to work; (2)

opinions from physicians that further surgery is not recommended; (3) medical labs that show no

reoccurrence of disc disease; (4) medical labs that show no evidence of radiculopathy; (5)

Plesia's minimally antalgic gait; (6) Plesia's failure to seek medical treatment since June 2005;

(7) an opinion from a physician that Plesia simply needed "routine maintenance" care; (8)

Plesia's ability to enjoy hobbies; (9) Plesia's ability to assist with household activities; (10)

Plesia's ability to visit with family; and (11) Plesia's pain amplification behaviors.  (Tr. 19.)  The

ALJ also considered many facts that were relevant to his credibility determination (20 C.F.R. §

416.929(c)(3)), which is discussed below.  The ALJ's review of such factors indicates that he

followed the requirements of SSR 96-3p, 20 C.F.R. § 404.1529, 20 C.F.R. § 416.929, and this

Circuit's precedent established in *Duncan* when he considered Plesia's allegations of pain,

fatigue, and reaction to stress**.**

The Court finds that the ALJ's determination that the persistence and severity of Plesia's

pain does not limit his capacity for work to the extent of rendering Plesia disabled was reached in

accordance with applicable law and is supported by substantial evidence in the record.

(5:08CV00214)

    **D.**    **The ALJ Appropriately Determined the Credibility of Plesia's Complaints of Pain.**

       It is not the function of a reviewing court to determine the credibility of the claimant.

*Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987).  Credibility

determinations regarding a claimant's subjective complaints rest with the ALJ.  *See Hopkins v.*

*Comm'r of Soc. Sec.*, 96 Fed.Appx. 393, 395 (6th Cir. 2004) (*citing Siterlet v. Sec'y of Health &*

*Human Servs.*, 823 F.2d 918, 920 (6th 1987)).  The ALJ's credibility findings are entitled to

considerable deference and should not be discarded lightly.  *See Villareal v. Sec'y of Health &*

*Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

       When an individual alleges disabling symptoms, 20 C.F.R. § 416.929 requires the ALJ to

follow an outlined process for evaluating these symptoms.  First, the ALJ must determine

whether objective medical evidence supports the claimant's allegations regarding the disabling

effects of the impairment.  20 C.F.R. § 416.929.  If the ALJ finds that the objective medical

evidence does not support the claimant's allegations, the ALJ may not simply reject the

claimant's statements, but must consider them in light of the entire record.  *Id.*  In assessing the

credibility of statements, the ALJ must look to the relevant evidence in the record.  *See* SSR 96-

7p.  In addition to the medical evidence, the ALJ should consider seven factors, as they may be

relevant to a particular claim.  *See* 20 C.F.R. § 404.929(c).  The ALJ need not analyze all seven

factors, but should make clear that he considered the relevant evidence.  *See Cross v. Comm'r of*

*Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).  The credibility determination must

contain specific reasons for the finding, "supported by evidence in the case record, and must be

sufficiently specific to make clear to the individual and to any subsequent reviewers the weight

(5:08CV00214)

the adjudicator gave to the individual's statements and the reason for the weight."  SSR 96-7p;
*see also Cross*, 373 F. Supp. 2d at 733.  Additionally, SSR 96-7p states, "[t]he finding on
credibility of an individual's statements cannot be based on an intangible or intuitive notion
about an individual's credibility.  The reasons for the credibility finding must be grounded in
evidence and articulated in the determination or decision."

     Plesia claims that the ALJ failed to follow the requirements of SSR 96-7p in finding that
Plesia's symptoms were not credible.  ECF No. 19 at 9.  Plesia alleges that the ALJ mentioned
only one of the seven factors, and that his findings on this factor were exaggerated.  ECF No. 19
at 10.  Plesia emphasizes that he used to enjoy hobbies such as hunting and fishing, and that he
only tries to help with home chores.  Plesia also argues that he has "consistently acted like a
person in pain."  ECF No. 19 at 10.  For example, he has had several surgeries, consultations to
determine the cause of his pain, physical therapy, trigger point injections, and he continued to
work until he the pain was unbearable.  ECF No. 19 at 12.  The Commissioner responded that the
treating physician's opinions obviated the need to determine credibility, that the ALJ mentioned
several, if not all, seven factors in his opinion, and that the failure to mention all factors is
harmless error.  ECF No. 23 at 9.

     This Court finds that the ALJ considered at least five, if not six factors relevant to
Plesia's credibility determination.  *See Cross*, 373 F. Supp.2d at 733.  First, the ALJ considered
Plesia's daily activities.  He found that Plesia is unable to help with home chores such as lawn
care; however, he does try to help with grocery shopping.  (Tr. 17.)  The ALJ also noted that

-18-

(5:08CV00214)

Plesia does not participate in clubs, social groups, or church, but he is not reclusive and visits with family.  (Tr. 17.)

Second, the ALJ considered the location, duration, frequency, and intensity of Plesia's pain.  The ALJ reviewed Plesia's reports of pain during several doctor visits.  In October 2004, Plesia reported that he was in constant, occasionally sharp, pain.  (Tr. 18.)  Plesia also reported that he experienced numbness in the left leg and foot, tenderness in the lumbar spine, and decreased sensation on his left side.  (Tr. 18.)  In January 2005, Plesia was diagnosed with chronic pain syndrome.  (Tr. 18.)  In June 2005, Plesia reported that he experienced pain in his left leg, a burning sensation in his left foot, tenderness in his lumbar spine, decreased sensation in his left thigh, lower leg, foot, and first web space, and tingling in his last three toes.  (Tr. 18.)  Plesia also stated that his legs occasionally give out.  (Tr. 18.)

Third, the ALJ considered factors that precipitate or aggravate pain.  Plesia reported in October 2004 that his pain worsened by physical activity and weather changes.  (Tr. 18.)  In June 2005, Plesia reported that movement aggravated his lower back pain.  (Tr. 18.)

Fourth, the ALJ considered the type, dosage, and side effects of Plesia's medication.  Plesia took pain medication, and also used a TENS unit, skelaxin, indocin, and a lidoderm patch.  (Tr. 18.)

Fifth, the ALJ considered treatment, other than medication.  Plesia had surgery in 1998 and 1999.  (Tr. 18.)  He attended physical therapy in 2002, which occasionally helped with the pain.  (Tr. 18.)  Plesia also had trigger point injections, which he stated did not alleviate pain.  (Tr. 18.)

(5:08CV00214)

Lastly, the ALJ considered other factors, many of which were relevant to functional limitation such as Plesia's use of a cane and back brace, ability to walk a block, ability to lift thirty pounds, inability to bend, ability to squat, ability to sit for one half hour before changing positions, ability to stand for ten minutes, and that his condition has not changed since 2004. (Tr. 17-18.)

Nevertheless, after reviewing the entire record, the ALJ found that Plesia's statements were not credible and that Plesia did not have a disabling impairment. The ALJ's opinion reviewed the facts in narrative form, covering six credibility factors. While Plesia may have preferred a different format, the ALJ is not required to opine in a specific format. Rather, the ALJ is required to articulate specific reasons for his finding in an understandable manner. The Court finds that the ALJ accomplished that goal.[4] Overall, the ALJ specified eleven reasons substantiating his conclusion and properly followed the requirements of SSR 96-7p, 20 C.F.R. § 404.1529(c)(3) and 20 C.F.R. § 416.929(c)(3) in finding that Plesia's allegations of disabling symptoms were not credible.

The Court finds that the ALJ's determination is supported by substantial evidence in the record.

**E.   The ALJ was Not Required to Order a Consultative Examination.**

An ALJ is under no obligation to automatically request a consultative examination. The ALJ must make a reasonable effort to contact the claimant's treating physicians to obtain medical

---

[4] Plesia's complaints that the ALJ misstated his daily activities are not well taken. Any distinctions between the ALJ's recitation and Plesia's amounts to semantics and certainly were not outcome determinative. *Compare*. Tr.17 *with* ECF No. 19 at 11.

-20-

(5:08CV00214)

evidence.  20 C.F.R. § 404.1512(f).  Then, the ALJ may request a consultative examination if a

medical source is unable to provide certain tests, or a medical source is nonproductive or

uncooperative.  *Id.*

    The burden is on the claimant to provide an adequate record upon which the ALJ can

make an informed decision as to disability status.  *See Landsaw v. Sec'y of Health & Human*

*Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  The ALJ is required to "develop the factual record

fully and fairly" and to conduct a "full inquiry."  *See Johnson v. Sec'y of Health & Human Servs.*,

794 F.2d 1106, 1111 (6th Cir. 1986); *Landsaw*, 803 F.2d at 214.  The ALJ, however, is not

required to expand the panoply of medical evidence available to him or her by ordering a

consultative examination unless the record establishes that such an examination is *necessary* for

an informed disability determination.  *See Landsaw*, 803 F.2d at 214.

    Plesia claims that the ALJ failed to follow regulatory provisions and the Commissioner's

own policies when he did not refer plaintiff for a consultative exam prior to making his decision.

ECF No. 19 at 13.  In support of his position, Plesia argues that the ALJ failed to request a

consultative examination when Plesia's last medical treatment was at least two years before the

hearing.  ECF No. 19 at 14.  The Commissioner responded that the regulations do not require the

ALJ to request an examination; that the treating physicians provided sufficient evidence; and that

Plesia failed to request an examination or visit a treating physician in the last few years.  ECF

No. 23 at 13.  Plesia's arguments are not well taken.

    The statute is permissive; it states that the ALJ may request a consultative examination

under certain circumstances.  None of those circumstance apply in this case.  The ALJ questioned

-21-

(5:08CV00214)

Plesia extensively about his symptoms and abilities and requested and received medical reports from several doctors including Drs. Gutlove, Rivera-Weiss, Cecil, and Erickson.  Those medical reports were informative and consistent.  Accordingly, the ALJ did not fail to follow regulatory provisions and the Commissioner's policies when he did not refer Plesia for a consultative exam prior to making his decision.

The Court finds that the ALJ adequately developed the record.

**F.  The Medical Evidence in the Record was Adequate to Determine Whether Plesia was Disabled, Obviating the Need to Re-contact a Treating Physician.**

Plesia frames his sixth assignment of error in two different ways.  First, he alleges that the "Commissioner committed legal error and failed to fairly and fully develop the record by neglecting to re-contact the treating sources, where necessary to obtain updated and clarifying information relative to functional limitations."  ECF No. 19 at 2.  Later, he alleges that the "Appeals Council committed legal error by failing to remand this matter in order that Plesia's treating physician could be re-contacted . . . ."  The following analysis applies to both constructions of the sixth assignment of error.

This Court is not free to consider new evidence before the Appeals Council when the Council refused to review the case because the ALJ's decision, not the Council's decision, is the final, appealable order.  *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir.1993).  Accordingly, a district court may not reverse an ALJ's decision "on the basis of evidence first submitted to the Appeals Council."  *Cotton*, 2 F.3d at 696.  Rather, the court may "remand for consideration of evidence that is presented after the ALJ's decision, but prior to the Appeal's Council action" if the claimant satisfies the requirements in 42 U.S.C. § 405(g).  *Id.*  The claimant must show that

-22-

(5:08CV00214)

the evidence is (1) new, (2) material, and (3) "there is good cause for failure to incorporate it into the record at the administrative level."  *Id.*  To prove good cause, the claimant must provide "a valid reason for failing to obtain relevant examinations prior to hearing."  *Id.*

The evidence at issue is a Residual Functional Capacity Questionnaire completed by Dr. Erickson dated September 18, 2007, five days after the ALJ issued his decision.  (Tr. 21, 371-73.)  The Questionnaire provided that: Plesia can walk one to two blocks; sit for two hours; stand for thirty minutes; sit and stand/walk at least six hours in a working day; must rest for thirty minutes two to three times during an eight hour working day; occasionally lift less than ten pounds in a competitive work situation; never lift and carry over ten pounds in a competitive work situation; stoop and crouch for ten percent of an eight hour working day; and, is likely to experience "good" and "bad" days.  (Tr. 371-72.)  Lastly, the Questionnaire stated that Plesia does not require the use of any ambulatory device and listed no other limitations.  (Tr. 372-73.)  Based on the above assessment, Dr. Erikson opined that Plesia would be absent from work approximately twice a month.  (Tr. 372.)

The regulations provide that the ALJ will re-contact medical sources if the medical evidence from the physician is inadequate to determine whether the claimant is disabled.  20 C.F.R. § 404.1512(e)(1).  In particular, the ALJ will request additional evidence if the reports have conflicts or ambiguities that must be resolved, the reports do not contain all necessary information, or the reports are not based on medically acceptable clinical and laboratory diagnostic techniques.  *Id.*  The ALJ, "may not seek additional evidence or clarification from a

(5:08CV00214)

medical source when [he or she] know[s] from past experience that the source either cannot or will not provide the necessary findings." 20 C.F.R. § 404.1512(e)(2).

Plesia has not convincingly argued that the medical evidence in the record was inadequate to determine whether he was disabled.  In particular, the ALJ contacted and received information from Dr. Erickson who transmitted what he thought appropriate and, regarding what he did not transmit, wrote "[t]he records are lengthy and will not be repeated in this report, though they have been reviewed.  His past medical history has been reviewed."  (Tr. 207.)  Plesia does not state what additional information would be gained other than that already provided.  Moreover, Dr. Erickson's questionnaire is consistent with the medical evidence in the record and, therefore not new or material.  Plesia does not explain what conflict or ambiguity exists that will be resolved by further delving into a file which suggests that Plesia has a better residual functional capacity than that expressed in the State Agency report.  As importantly, Plesia did not provide good cause for his failure to obtain all relevant information before his hearing.

The ALJ fully developed the record and did not fail to re-contact a treating source to obtain additional information relative to Plesia's functional limitations.  Accordingly, remand is inappropriate.

### IV. Conclusion and Recommendation

For the reasons provided above, the Court recommends that the ALJ's decision be affirmed in its entirety and that the referral to the undersigned be terminated.


February 23, 2009                          /s/ Benita Y. Pearson
Date                                     Benita Y. Pearson
                                         United States Magistrate Judge

(5:08CV00214)

## **OBJECTIONS**

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).